Margaret **GILKEY**, Appellant,

v.

Cecil **ALLEN**, Appellee.

No. 1392.

Court of Civil Appeals of Texas, Tyler.

May 14, 1981.

Pal Maloney, San Antonio, for appellant.

Roland G. Brown, Jacksonville, for appellee.

MOORE, Justice.

This is a suit to set aside the probate of a will. Plaintiff, Cecil Allen, the son of the decedent David Allen by a former marriage, instituted suit against defendant, Margaret Gilkey, sole legatee under the will, seeking to set aside the order admitting the will to probate and the appointment of defendant as independent executrix of the estate. As grounds for a cause of action, plaintiff alleged undue influence and lack of testamentary capacity on the part of the decedent. Plaintiff further alleged that the will did not reflect the intentions of the decedent with regard to the disposition of his property and that the decedent was mistaken as to the exact contents of the will. Defendant answered with a general denial. Prior to submission of the case to the jury, plaintiff waived the issues of undue influence and lack of testamentary capacity. The case was submitted to the jury upon a single special issue, reading as follows: "Do you find from a preponderance of the evidence that at the time David Allen signed the will, he did not know or understand the contents of the paper which he executed as a will marked as 'Exhibit PX–2'?" The jury answered "We do." In response to plaintiff's motion for judgment, the trial court entered judgment setting aside the order of the Probate Court admitting the instrument to probate as well as letters testamentary issued to defendant, Margaret Gilkey, pursuant to said order of probate. From such judgment Margaret Gilkey perfected this appeal.

We reverse and render.

The will dated April 17, 1969, was a self-proving will. It was signed "David Allen" and "Margaret Gilkey Allen." The testimony shows it was drafted at the request of Mr. Allen by Giles Harris, Esq., who had previously represented Mr. Allen in a divorce suit. The pertinent parts of the will are as follows:

THAT WE, DAVID ALLEN and wife, MARGARET GILKEY ALLEN, of Anderson County, Texas, both being of sound and disposing mind and memory, and above the age of Twenty-One years, do hereby make, publish and declare this to be our last will and testament, hereby revoking all previous wills and codicils, if any, by either of us heretofore made.

\* \* \* \* \* \*

II.

It is our will and desire, and the will and desire of each of us, that the Beloved Survivor of us, the said David Allen or Margaret Gilkey Allen, as the case may be, shall have absolutely and in fee simple all of the estate of every character and description, real, personal or mixed, which either or both of us may own or have any interest in at the time of the death of the one of us dying first hereby intending to include both community property and separate property, and we hereby devise and bequeath unto such Survivor all of such property; the property herein included being all property in the name of David Allen, but only includes the property in them [sic] name of Margaret Gilkey or Margaret Gilkey Allen, after April 14, 1969, as all of the property in the name of Margaret Gilkey or Margaret Gilkey Allen prior to and including April 14, 1969, belongs to her son Harley K. Matterson, as his money paid for same or it is his money that she has in her name, and this property includes real, personal or mixed property prior to and including April 14, 1969.

III.

We hereby appoint the Survivor of us, the said David Allen, or garet [sic] Gilkey Allen, as the case may be, Independent Executor or Independent Executrix, as the case may be, of this our last will and testament \* \* \* \*

IV.

In the event of our joint deaths or within Thirty (30) days of each other, then it is our will and desire and the will and desire of each of us, that all of the property and estate of every character, real, personal and mixed, which either or both of us may own or have any interest

in at that time, shall pass and vest absolutely and in fee simple as follows:

1. All of the property now in the name of Margaret Gilkey or Margaret Gilkey Allen prior to and including April 14th, 1969, shall be the property of her son, Harley K. Matterson, his bodily heirs, to sell or dispose of as he sees fit or proper to do.

2. One (½) Half of the community property of Margaret Gilkey or Margaret Gilkey Allen shall be the property of her son, Harley K. Matterson, to sell or dispose of as he sees fit or proper to do.

3. One (½) half of all community property shall be the property of his son, Cecil David Allen, and all of all of [sic] the separate property of David Allen prior to his marriage to Margaret Gilkey Allen, tp [sic] sell and dispose of as he sees fit or proper to do.

The evidence shows that the will was prepared in the office of Giles Harris in Longview, Texas. There is no testimony as to what transpired at the time of the execution of the will since neither the attorney who prepared the will nor any of the witnesses could remember the transaction. The testimony shows that the testator could read and write, but that he read slowly and on some occasions had others to read for him.

The testator died on April 23, 1977, at the age of 73, some eight years after the will was executed. The will was admitted to probate on May 25, 1977, and defendant subsequently qualified as independent executrix. Thereafter, on March 14, 1979, the present suit contesting the will was instituted by plaintiff.

The testimony is not clear as to when and where the testator first met defendant, Margaret Gilkey. Cecil Allen testified that he first met her in the summer of 1969 when she and his father visited him at his home in California. He further testified that when he later came to Texas at Christmas in 1969 his father introduced her to him as his wife. While there is no evidence of a ceremonial marriage between the testator and Margaret Gilkey, the testimony shows that they lived together and passed themselves off as husband and wife.

In support of his allegation that the testator did not know or understand the contents of the will, plaintiff called as a witness Tom Richmond who testified over objection that the testator was formerly his brother-in-law and that the plaintiff, Cecil Allen, was his nephew. He testified that he and David had been close friends for many years and that he had talked to David about making a will in 1963 and again in 1965. On both occasions he testified that David told him that he saw no necessity to make a will since his wife Rosa, his wife at that time, and his son Cecil got along so well together. Mr. Richmond testified that sometime after Rosa and David were divorced and after David had met Mrs. Gilkey, David called him at his home in California and sought his advice about a will. He testified that David related to him that Mrs. Gilkey was pushing him to draw a will. He stated that he advised David that if he made a will, all the property he acquired by him before meeting Mrs. Gilkey should be left to his son Cecil because he was his only heir; that he further advised David that any property he and Mrs. Gilkey acquired during their association should be left one half to Cecil and one half to Mrs. Gilkey. He stated that David said that he would do just that. Sometime later, he testified, David and Mrs. Gilkey visited him at his home in California and while there David told him that he had executed a will bequeathing his property "just like you told me." Shortly before David died, Mr. Richmond testified, David again called him at his home in California and during the conversation, stated that his will had been prepared "like I told him" and he felt he could "leave Cecil in good shape."

Defendant seeks a reversal by ten points of error most of which were not properly preserved for appellate review. Under the ninth point she contends that the trial court erred in admitting into evidence, over her objection, the testimony of Tom Richmond recanting declarations of the testator to the effect that he had bequeathed his property

to his son, Cecil Allen, because such testimony had the effect of contradicting the terms of the will and was therefore in violation of the parol evidence rule. Under her first point of error, she contends that the trial court erred in overruling her objection to the submission of Special Issue No. 1 inquiring as to whether the testator knew or understood the contents of his will, because there was no probative evidence to support such issue and therefore an affirmative finding thereon would not, as a matter of law, constitute a basis to set aside the will. Essentially, it is defendant's contention that the will clearly shows that the testator intended to devise his property to her and that the parol testimony showing that the testator made certain declarations showing he intended to devise his property to his son, Cecil Allen, was not admissible to set aside or vary the terms of the will in the absence of ambiguity or mistake apparent on the face of the will. We have concluded that defendant's contention must be sustained.

Plaintiff's petition contains no allegations that the will is ambiguous or that mistake is apparent on the face of the will. The will appears to be complete within itself and clearly shows that the testator intended to will his property to Margaret Gilkey Allen.

It is well established that if a testator, who is of sound mind and able to read and write, executes a will and has it witnessed as required by statute, the testator is presumed to know the contents of the testamentary instrument which he has signed. *Boyd v. Frost National Bank*, 145 Tex. 206, 196 S.W.2d 497 (1946); *Kelly v. Settegast*, 68 Tex. 13, 2 S.W. 870. The rule is not without exception, however, as was pointed out in *Kelly v. Settegast*, supra. The court in that case stated that the presumption does not prevail if it be shown that there existed a set of circumstances in the case which casts suspicion on the issue of whether the testator knew the contents of the will. The suspicious circumstances in that case showed that the testator, a man unable to read and write, while gravely ill at the home of one of the legatees, did not request that a will be prepared but signed the will by his mark disinheriting his only living daughter, bequeathing his property to legatees who were not related to him. There were other "suspicious" circumstances, but those detailed will suffice to illustrate the inapplicability of that case here.

In the present case, as in *Boyd v. Frost National Bank*, supra, the record fails to show that the execution of the will was tainted by suspicious circumstances. The record contains no evidence that the testator did not read or was not able to read his will, that he was not of sound mind, or that he was unduly influenced. It does not follow that suspicious circumstances arose merely because the testator chose to disinherit his only son. The record, on the contrary, affirmatively shows that the testator could read and write, that he had the will drawn up by an attorney who had previously handled other legal matters for him, that the will was executed before two disinterested witnesses, and that the will was executed eight years prior to the death of the testator. Thus, no suspicious circumstances were shown to exist and without such proof, we are of the opinion that the testimony of Mr. Richmond concerning there declarations of the testator as to how he intended to dispose of his estate should have been excluded by the trial court.

In will construction cases, the well settled rule is that parol evidence is not admissible to vary, contradict, or add to the contents of a testamentary instrument. *Schelb v. Sparenberg*, 133 Tex. 17, 124 S.W.2d 322; *Heidenheimer v. Bauman*, 84 Tex. 174, 19 S.W. 382 (1892); 61 Tex.Jur.2d Wills, sec. 186. We believe that the rule is also applicable in a case such as this where the contestant seeks to set aside a will by showing that the disposition made by the testator was not what he intended. To allow admission of this evidence, would result in the setting aside of the probate of a will which was executed with all the formalities and solemnities of the law without showing that there was anything irregular about the execution of the will. When the

basis for the setting aside of the order probating a will is that the testator did not know and understand the contents of the will, the contestant must show more than that the testator had expressed a different intention than as was expressed in the will.

In the absence of any evidence showing any suspicious circumstances surrounding the execution of the will, the testimony of the witness Richmond tending to show that the testator had a different scheme for devising his property was without probative force. Under these circumstances, the issue of whether the testator knew and understood the contents of his will was not raised by the evidence and therefore no such issue should have been submitted to the jury. The defendant's objection to the submission of the issue should have been sustained and thereupon the trial court should have instructed a verdict on its own motion or should have withdrawn the case from the jury and rendered a take-nothing judgment against plaintiff. Texas Rules of Civil Procedure 434 provides that this court has a duty to render such judgment as the trial court should have rendered. Accordingly, the judgment of the trial court is reversed and judgment is here rendered that the appellee take nothing.

Reversed and rendered.